Good morning, Mr. Marsha. Would you kindly call the next case on the docket, please? Your Honor, this case will adopt 3-15-0760, people of the State of Illinois, Plaintiff's Appellate, Mr. Jordan Ratley, Defendant Professor. Arguing on behalf of the Defendant Appellate, Mr. Gavin Dowd. Arguing on behalf of the Plaintiff's Appellate, Mr. Edward Randall III. All right, thank you. Mr. Dowd, on behalf of the Defendant Appellate, you may proceed. Thank you, Your Honor. Once again, my name is Gavin Dowd. I'm with the Office of the State Appellate Defender, and I represent Defendant Appellate Jordan Ratley. May it please the Court, counsel. Taken as true and liberally construed, Jordan Ratley's allegations that his trial attorney failed to investigate two pieces of evidence, specifically a phone call between him and the victim, and the condition of Mr. Ratley's clothing on the night of the incident, raise an arguable claim of ineffective assistance of counsel. What about the substance of the phone call? Not just a phone call took place. That's what it says when we assume that a phone call took place between the two parties noted. But what is it that was said that would support the conclusion, not the factual assertions? Well, Mr. Ratley's petition alleges that it would have corroborated his testimony. But isn't that a conclusion? I don't mean to undercut your argument. But is there anything factual about what he said that was agreed to or what she said? The only information we have about the content of the phone call at this point are Mr. Ratley's allegations in the petition. Well, there are phone calls in the record that the trial court, in looking at the petition and reviewing the record, there are phone calls in the record, correct? Correct, Your Honor. And those phone calls were furnished to a defense attorney, trial counsel, correct? The ones that were presented at trial is my understanding, yes. And so your argument or position is that there's some, this other phone call that was out there that would have been exonerating as to the entry, right? Is that the argument? That's the argument, correct, Your Honor. But the allegation of the petition doesn't set forth the specific contents of that conversation, does it? Other than it would be cooperative, correct? That's correct, Your Honor. But this is a first-stage case, so it doesn't need to. It doesn't need to? No, it does not need to, Your Honor, because what he's, what Mr. Ratley alleges in the petition is enough to tell us roughly what's going to be said on the phone call. We have to take his allegation as true that the ---- But I guess what we're all driving at is I guess we're viewing it as a conclusion that was alleged rather than the facts upon which we might draw that conclusion. In other words, in the conversation, the victim said, gee, you were polite, knocked on the door, and quietly entered. I mean, I'm giving you the extreme. But that's a factual allegation in the petition rather than the victim would corroborate my testimony. I understand that. It's a first-stage petition. We're looking at a liberal construction of the petition. And if you liberally construct, what he says in the petition is that it's going to corroborate his testimony in trial. We can infer from that that she is saying something that will lead to that. We don't know specifically what she said because we don't have a report of the recording of the phone call at this point in time. But we do know that the content of that phone call, assuming that Mr. Ratley's allegation is true, that it's going to corroborate his testimony, we can liberally construe that to say that the content of the phone call is going to say something along the lines of he did not use force. And, in fact, because there is evidence in the record that Ms. Whitehouse actually said Jordan did not use force when he came to the department, it's fair to infer that she actually said the same thing on the phone call, too. Yeah, but here's the problem. Under the close-settled case law, a post-conviction petition is not notice pleading. I think what you're missing here in this point is, and the case law is very well settled, during first-stage proceedings, the trial court conducts an independent evaluation of the petition, liberally construing the factual allegations and taking them to be. And I think what you're missing here in this point is, under the close-settled case law, a post-conviction petition is not notice pleading. I think what you're missing here in this point is, under the close-settled case law, the trial court conducts an independent evaluation of the petition, liberally construing the factual allegations and taking them to be. And I think what you're missing here in this point is, under the close-settled case law, a post-conviction petition is not notice pleading. I think what you're missing here in this point is, under the close-settled case law, a post-conviction petition is not notice pleading. And I think the Court would agree with me that, for example, the allegation that the phone call took place is a factual allegation. Yes. The allegation that it was between Mr. Ratt and Ms. Whitehouse, that's a factual allegation. So really what we're getting at is the content of the phone call. And so how do we assess whether or not there was prejudice and whether or not it stands for what the defense represented without fleshing out any of the contents of the factual allegations? Because all we have at the trial judge sees is a conclusion. It's cooperative of his testimony. To what extent? What is cooperative? Can't you see? I mean, it doesn't really state anything that anybody can really look at in the context of anything else. Well, once again, Your Honor, I think that it's important that we do have a statement from Ms. Whitehouse that was testified to at trial that tracks the language Mr. Rattley uses in his petition. Because that, at the very least... What statement was that that tends to... The statement to the defense investigator. Okay. Does it justify trial? The investigator? Yes. Okay. Yes. It was in late August of 2011. It's in pages 1272 and 174 of the report of proceedings. It's essentially the same statement. Jordan did not use force. Okay. She testified at trial as well. Correct, Your Honor. She did not take that tact, as I recall. No, she didn't. Her testimony was cooperative of the other people present in the apartment, that it was a forceful entry. That's correct, Your Honor. All right. Thank you. I think it is fair to infer from Mr. Rattley's allegation that it would have corroborated his testimony on a specific point, that she made a statement either identical to or similar to the one that she gave to the investigator. Why wasn't it in the petition? Why does the court have to search out all of these, fill in the gaps? Is that our job, to fill in the gaps in the petition? Well, no, it's not the job to fill in the gaps in the petition in the first stage at all. At this point in time, we don't have a recording of the phone call yet. But Mr. Rattley has to rely on his memory of a conversation that occurred years prior. And, you know, because this wasn't entered in as a trial, obviously, there's no transcript of it. He doesn't have the recording. But the recording exists and it's out there, and he knows roughly what was said on it. I understand that. But I guess I'm getting hung up on that proverbial divorce, is that if he knows what was said, obviously, if he believes that it corroborates him and intends to prove his innocence of the home invasion, all I have to say is she told me that she now remembers that he was let into the apartment, he didn't push his way in the door, something like that, and that might have been enough. Well, certainly, if you had alleged that, it would be a simpler case. But I appreciate you're an advocate trying to deal with what the hand you were dealt, so to speak, right? Well, but I do think I have a winning hand here at the first stage. Good answer. Thank you, Your Honor. And that's because I – the only Supreme Court in Edwards talks about how pro se petitioners, they don't have legal training, they don't know quite what they're supposed to do. So really the job of the court – excuse me – the job of the court at the first stage is to see whether or not there's any arguable merit to the claim. It's to screen out – and I think they said this in Riviera – it's to screen out petitions that are obviously without merit. This is not one of those petitions. And I don't disagree with you, but I guess how do you then – let me ask you a very plain question. How do you interpret the requirement that the post-conviction petition support, quote-unquote, factual allegations in support of the claim? Where are the factual allegations here? Factual allegations in something with inclusions, don't they? I think with the post-conviction – yes. But I think what the post-conviction act is saying is that Mr. Ratley or a noticier can't just stay out of the United Federal Systems of Counsel. He's explained why. And that is something that he has done in this petition. He has explained the basis for a genitive active assistance claim. Now, without knowing specifically what was said on the recording, I don't think that this – But he knows what was said on the recording. It's his petition. He doesn't know it. He's a party to the conversation. Well, once again, this is a party conversation that takes place years ago. One out of many that I'm sure that he's had can point to this. So that information, that's something that would be needed certainly at the second stage. This would not be enough to get to a third state evidentiary hearing. But that's not the question before the court today. The question before the court today is whether this is enough to get him a lawyer who can help him flesh out the claim, who can help him make all of these factual allegations necessary to establish every element of the claim. Isn't there a strong presumption that trial counsel acted reasonably in presenting evidence on the defendant's behalf? Trial counsel had all of the phone calls, correct? In fact, the defendant's attorney submitted disclosure to the state that they were going to use at least one of the phone calls, correct? That disclosure, it's not 100% clear to me what that was. I did take a look at that. So it appeared to be the record reflects that trial counsel had the phone calls. I don't think the record shows the trial counsel had this phone call. Well, the state would have been required to turn over all of the phone conversations that they were aware of between the defendant and Ms. Wolchoff, right? Under the discovery rules, I believe so. But this particular phone call, there's nothing in the record to say that it was turned over or that trial counsel listened to it, even if it was. So the record number does not contradict Mr. Ratney's claim that trial counsel didn't investigate the phone call. What about the shirt issue? I know it's putting you on the other issue. What about the shirt issue? The shirt issue really goes to what the state argued in closing. There was this evidence that there was some sort of liquid drops on the ground leading from the apartment towards the parking lot. At trial, it was theorized that this was a trail of blood that had been left that was dripping from Ms. Wolchoff's, and that she would have been bleeding. In other words, when he allegedly carried her out of the house, right? That would be, yes. So this would be the trail of peach dip. Correct, Your Honor. Okay. Again, the problem I was having was I thought the victim testified that she did not start bleeding until she was in the car, and the defendant himself testified he saw no blood on her until he was driving the car. So how does that – isn't that already in front of the jury and wasn't the shirt admitted? This photograph is the shirt we're admitting. And the – that information is in front of the jury through Mr. Ratney and possibly through Ms. Wojtas, although because of her condition at the time, the jury really could have decided that it couldn't align what she was saying about that particular sequence of events. So as for Mr. Ratney, it's, you know, just sort of his word. And again, he's the defendant, and that's sort of a tough thing sometimes for a defendant to overcome. But the shirt was in evidence, so it was there for the jury to examine. And how do you make a claim for ineffective when the evidence is cumulative and it's in the record already? The issue wasn't raised at trial. So there are hundreds of exhibits in this case. There are – there's a lot of testimony, several witnesses. And unless this gets pointed out, it's something that can very easily be missed. So wasn't it the defense theory all along? Look, my guy's guilty of domestic battery, aggravated domestic battery, but, you know, he didn't kick the door in and he didn't kidnap her. So that basically was the defense theory, like throw my guy under the bus with battery. But, ladies and gentlemen, there's just insufficient evidence of the other cops. Wasn't that kind of his theory? Roughly. Yes, Your Honor. And so both these items of evidence went to those contested issues. So this isn't stuff that undermines the notion that anything else occurred. This goes directly to – the shirt goes to his intent, how he's carrying her, whether he puts her down. The phone call goes to the manner of his entry into the home, which is a crucial issue in deciding whether he had authority or whether the state had proven that fact beyond a reasonable doubt. For the home invasion? I'm sorry, Your Honor? For the home invasion? For the home invasion, correct. Well, the overarching thing is – and we can touch on this. As you know, in the well-settled Strickland standard, there's two prongs that have to be met. We have the unprofessional error and we have the prejudice. And I'm sure the state would probably argue that if the evidence against him was overwhelming, there would be no prejudice and, therefore, you couldn't leave that prong. So the case, the petition would go nowhere. What's going to be your response to whether or not the evidence against him was overwhelming, notwithstanding the alleged ineffectiveness? I assume I can answer that. Yes. Thank you, Your Honor. The response is that when you're deciding whether there's arguable prejudice in this case, you have to take account of counsel's errors. That's what Strickland says. So you can't just look at the trial evidence and say that was overwhelming, therefore, you can't show prejudice. In fact, because this Court found the evidence overwhelming on direct appeal, that really just underscores the need for additional defense evidence to support the defense theory of the case. Interesting. Okay. Thank you. Have a good day. Thank you, Your Honor. All right. On behalf of the people, Mr. Sneca? Good morning, Your Honor. My name is Randy Sneca. I'm Assistant State's Attorney in DuPage County State's Attorney's Office, and I represent the people in this matter. Counsel? May it please the Court? Your Honor, when I read the opening brief in this case and looked at the record, this seemed to me to be a garden variety first-stage post-conviction dismissal, alleging ineffective assistance for failure to present evidence. I didn't see anything special in it. I still don't see anything special in it. I believe I covered everything thoroughly in my brief. I'd like to stand in my brief and then address any questions you, Your Honors, might have, if that's okay. With regard to the phone call, were all the phone calls between the defendant and the victim turned over to the defense? Your Honor, it's my understanding that would be true. I did not look at that particular item specifically because I did not really believe that this hypothetical phone call would have amounted to prejudice, even if it did exist. And they didn't allege it wasn't turned over? I mean, that's not a claim in their brief. The other evidence in the case was that the door was open, but the defendant was not welcomed in. He came in without authority, correct? Well, I'm not sure that's correct. The evidence is that Damien Hall unlocked the door. To go out and talk to him. To go out to talk to him, and then the door flew open. There is no evidence, apart from defendant's testimony, which I suppose would be evidence, that the door was actually open. Everyone else said the door flew open. My point is force is not an element. Unauthorized entry is an element. That's exactly right, Your Honor. Force, with kicking the door or breaking the door down, is neither here nor there. As long as there's no authority, it's an unlawful entry, correct? It is correct, Your Honor, and that's another reason why this alleged phone conversation wouldn't really mean anything. Because whether he forced his way into the apartment is not germane. It's whether he's authorized. And that's fully addressed, even if he had been invited in by the limited authority doctrine, which I addressed in my brief. That's another legal basis to say. In the other phone conversations, particularly one that the defense counsel disclosed, the defendant makes admissions to Lisa, says that he was effed up and that he's sorry. Was that a theme throughout any of the conversations? I believe that is the case, yes, Your Honor. Mr. Visonico, what is your opinion on whether or not the petition must contain factual allegations as opposed to conclusory statements? That was the first paragraph of my brief, Your Honor. Conclusory allegations aren't sufficient. I cited Blair for that. I could have cited more cases, but I did cite that one. Even at the first stage, you have to put some burden on the defendant because you can't require trial courts to filter through records. That would be unworkable. Well, on that score, the defendant did give a specific date for the phone conversation, August 4th, 2011, correct? I believe that is correct, yes, Your Honor. That would not have been that difficult to find. Well, it's not that I'm looking for it, but just to say how it might have corroborated his story. I mean, why force the trial court's hand to go listen to the phone call if the defendant doesn't even bother to say how it might have corroborated his story? He did say he would have learned from the phone call that Lisa had not been bleeding and the defendant did not force his way into Mr. Smith's home. He did not say that in his post-conviction petition. That's what was asked of him. Page 9, paragraph 44, the defendant says, had the defense counsel given him... Page 9 of his brief, Your Honor? Page 9 of his pro se post-conviction petition. Paragraph 44 said, had the defense counsel gathered the defendant's clothing and located the conversation took place on the phone call from DuPage County Jail on August 4th, 2011, to the cell phone of Lisa Wochasz, giving the phone number, he would have learned that the victim had not been bleeding and that the defendant did not force his way into Mr. Smith's home. And he also alleges in paragraph 41 that the defense counsel was told of the phone conversation. Yes, Your Honor. And that particular allegation made its way into the evidence in this case by way of the defense investigator. She apparently told this to the defense investigator that the defendant didn't force his way into the home. So, at most, this phantom phone call would be cumulative impeachment evidence, but that's at most. And, I mean, if you're looking at a scale of evidence of guilt and evidence of this defense that he presented, I mean, we're talking about feathers on his side at this point. There's not enough sugar in the world to make lemonade out of these lemons. There just isn't. You've coined a lot of phrases here this morning. You missed one of Justice Burkett's famous... Okay, that was it. In any event, what about the strength of the evidence? It obviously is part of the Strickland standards, is it not? It is, Your Honor. There's two prongs, and if they are dissatisfied, either one of them would require the affirmation of the dismissal. Is the evidence in this case overwhelming against the defendant, notwithstanding the alleged ineffective assistance? Your Honor, it's held so in your direct appeal in the two paragraphs that I actually quoted verbatim in my brief. I could go through it again. Okay. You're confident that that is effective? There's three independent witnesses besides the victim about him bursting his way into the apartment and going directly and attacking her. There's testimony from the owner of the apartment that he said, You're not welcome here. You need to leave. And he still came in? He still came in. I mean, there's evidence that he tried to conceal his identity before coming in by covering the peephole. If he thought he was authorized to enter, why would he be covering the peephole? I mean, the evidence goes on and on, Your Honor. Anything further? If there are no other questions, we would ask that Your Honor's affirm the summary dismissal of this prosecution. Exactly. Mr. Dowd, I may bottle, please? Do you have five minutes? Yes. Thank you. First, I do just want to address briefly the evidence at trial again. The question here is not whether the evidence was sufficient to convict. It certainly was. The question is also not whether the evidence would be sufficient to convict even if we added the phone call and anything else. The question is whether it is arguable that even a reasonable probability exists that a jury could have acquitted Mr. Ratley. And the answer to that question is yes, because the state's evidence was not the only evidence in the case. Mr. Ratley testified that, first of all, that the door opened for him. He didn't open the door. There is other evidence of that fact, which is Damien Hall's prior statements, a written statement and a recorded statement, saying that he opened the door. At trial, Mr. Hall tried to backtrack that a little bit and say, well, I meant that I didn't unlock the door. Well, this issue was litigated at trial, correct? The jury heard all of the evidence from him coming into the apartment, right? Well, no, Your Honor, that's the point. The jury did not hear all the evidence because the jury did not hear this phone call. Which would have impeached? Well, it would have done more than that, Your Honor. It would have been substantively admissible. So Ms. Whitehouse was already impeached by the statement that we discussed earlier and that counsel put a statement a few minutes ago. But the jury was instructed it could only use that prior statement with regards to Ms. Whitehouse's credibility. And the statement would have been used to show that there was no force used by the defendant in gaining entry. Correct, Your Honor. And is force an element? Force is not. Well, the use of force inside the home is, but as we're talking about it here, force... The method of entry has to be without authority. That's correct, Your Honor. Not by force. That's correct, Your Honor. It used to be, I believe, that one time home invasion may have required some force, but not anymore. Not today. But that doesn't mean it's not relevant to whether Mr. Rowley had authority. Because if you go back to what Mr. Rowley's testimony tried... Mr. Wolchoff could not have granted him authority, right? Correct. He couldn't have granted any authority, Your Honor. No, but that's not what... That's not why the statement would be important. The statement's important because not only does it corroborate his specific testimony, I didn't push my way past people, but his overall version of events, if the jury believes that, is in a home invasion. Well, didn't the jury... I guess that's a little missing. Didn't the jury at trial hear the investigator say essentially what he allegedly puts in the petition? The jury had already heard her alleged testimony or impeaching statements that he didn't enter with force, right? Correct, Your Honor. And they still found him guilty. Correct, Your Honor. But the jury also is presumed to follow some structures. The jury can't consider that statement as substantive evidence. It can't say, wow, that corroborates what the defendant's saying. It knows it can only consider that as to whether or not it's going to believe Ms. Hoytas is a witness. If it's used substantively, it contradicts not just Ms. Hoytas, but the other two witnesses who testified inside the home. On top of that, frankly, the recording's more persuasive. If the jury hears a defense investigator, someone who's aligned with the defendant, say, oh, yeah, the witness, she said something good for our side. If you hear someone actually speaking on the tape, that's going to have a bigger effect. So between that and the fact that it would have been admissible substantively, the phone call does make a difference. It does add to Mr. Rowley's case, and that's why there's arguable prejudice here. Is there any further questions? Thank you. I'd like to thank both counsel for the quality of their arguments here this morning, and we will, of course, take the matter under advisement, and a written decision will enter in due course. We are now adjourned for the day, subject to call.